IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ALLIANCE FOR THE WILD ROCKIES, et al.,<br><br>           Plaintiff,<br><br>     v.<br><br>UNITED STATES FOREST SERVICE, et al.,<br><br>           Defendants. | Case No.  1:19-CV-445-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it cross-motions for summary judgment filed by all parties to this case.  The Court heard oral argument on August 5, 2020, and took the motions under advisement.  For the reasons explained below, the Court will grant the motion filed by plaintiffs and deny the motions filed by defendants and intervenors.

## LITIGATION BACKGROUND

In September 2014, the Forest Service approved the Lost Creek-Boulder Creek Landscape Restoration Project, which proposed landscape restoration activities on approximately 80,000 acres of the Payette National Forest.  Alliance and other plaintiffs challenged the Project arguing it violated the National Forest Management Act ("NFMA"), among other laws, by failing to adhere to the requirements of the 2003 Payette National Forest Land and Resource Management Plan.

More specifically, Alliance argued that the Project violated the management goals for particular areas with the Payette Forest.  The 2003 Plan divides the Payette Forest into

14 sections that are called "management areas" ("MA"). The land within each MA is assigned to various categories that determine how the land is managed. These categories are called Management Prescription Categories ("MPC"). The categories range from "Wilderness" (MPC 1.0) to "Concentrated Development" (MPC 8.0).

Relevant here, MPC 5.1 places an emphasis on landscape restoration in order to provide habitat diversity, reduced fire risk, and "sustainable resources for human use." Timber harvest may occur on MPC 5.1 land, as an outcome of maintaining resistance to fire, but timber yield is not the primary purpose. In contrast, MPC 5.2 is forested land that has an emphasis on achieving sustainable resources for commodity outputs, such as timber production.  The desired conditions in MPC 5.2 include fewer large trees and more canopy cover.

The Project eliminates MPC 5.2 and replaces it with MPC 5.1.  In response to Alliance's lawsuit, the Forest Service conceded that the switch from MPC 5.2 to MPC 5.1 constituted a departure from the desired conditions set forth in the 2003 Plan, but urged the Court to accept that desired conditions are "flexible" and may be altered in the short term.

The Forest Service's argument was adopted by Judge Lodge who presided over the litigation at that time.  *See Alliance for the Wild Rockies v. U.S.,* 2016 WL 4581404 (D.Id.  Aug. 31, 2016).  On appeal, the Circuit affirmed Judge Lodge's decision in part and reversed in part.  *See Alliance for the Wild Rockies v. U.S.,* 907 F.3d 1105 (9th Cir. 2018).  The Circuit affirmed his decision finding that the Forest Service (1) did not violate the National Environmental Policy Act ("NEPA") by improperly incorporating

**Memorandum Decision & Order – page 2**

the analysis of – or "tiering to" – prior agency documents that did not undergo a full NEPA review, and (2) did not violate the Endangered Species Act ("ESA") by failing to reinitiate consultation with the U.S. Fish and Wildlife Service regarding the effects on critical habitat for the bull trout.  Those matters are not at issue here.

However, the Circuit reversed another part of Judge Lodge's decision and held that the Forest Service violated the National Forest Management Act (NFMA) when it created a new definition for "old forest habitat" and designated certain land to be managed for landscape restoration, as opposed to commodity production, contrary to the terms of the 2003 Payette National Forest Plan.  The Circuit identified the central failure of the agency to be a failure to explain how the Project would meet the goals set forth in the 2003 Plan as required by NFMA.

The Circuit remanded the case to the Forest Service for further proceedings consistent with their decision.  The Forest Service responded by issuing a 2019 FEIS and ROD that did not change the Project but purported to provide the explanation required by the Circuit and the 2003 Forest Plan.  Those documents make it clear that the Project will still utilize the desired conditions for MPC 5.1 (larger trees and less canopy cover) in all of the MPC 5.2 areas for the purpose of emphasizing habitat restoration and conservation. *See* FS2-081542-544.  The Forest Service justifies making no changes to the Project in the 2019 ROD and FEIS with statements that the Court will discuss further below.

Alliance has now filed a motion for summary judgment arguing that the 2019 FEIS and ROD contain the same flaws that existed in the 2014 FEIS and ROD and fail to include the justification required by the 2003 Forest Plan and the Ninth Circuit.  The

**Memorandum Decision & Order – page 3**

Government and the Intervenors have filed cross-motions for summary judgment arguing that the 2019 FEIS and ROD satisfy the concerns of the 2003 Forest Plan and the Ninth Circuit.

## ANALYSIS

The Court will not repeat the factual background set forth in detail in the Circuit's decision but will proceed directly to an analysis of the main issue in this case:  Do the 2019 FEIS and ROD provide the "articulation" required by the Circuit and the 2003 Forest Plan?  To determine if the Forest Service has satisfied the concerns of the Circuit, the Court will first review in more detail the Circuit's decision.

The Circuit held that the 2003 Forest Plan – and specifically the Plan's Vegetation Guideline VEGU01 – "instructs the Forest Service to manage the Plan's vegetative components in a manner that moves all components toward their desired conditions in the long term." *Id.* at 1115.  But the Plan "does not permit the Forest Service to abandon desired conditions in favor of different conditions entirely, without consideration of effects in the long term." *Id.*

Having identified the goals of the 2003 Forest Plan, the Circuit then identified the critical flaw in the 2014 ROD:  "The Forest Service has not articulated how the switch from MPC 5.2 to MPC 5.1 moves all components toward their desired conditions over the long term, as it is required to do under the 2003 Plan and agency regulations. Rather, the Forest Service has simply replaced the existing desired conditions with new and different ones." *Id.*  On remand, the Circuit directed the Forest Service to explain how

the "present deviation will move the Forest closer toward existing desired conditions over the long term." *Id.*

Does the 2019 ROD contain the explanation required by the Circuit? It certainly reaffirms the finding in the earlier ROD that the Project will violate the desired conditions in MPC 5.2 in the long term: "[T]he large TSC [Tree Size Class] would be overabundant for all three sets of desired conditions, with the most dramatic overabundance being with the MPC 5.2 areas (70% versus the desired 20-27%)." *See FS2-081533.*

Justifying this "dramatic" violation of MPC 5.2, the 2019 ROD offers this statement:

> It is much easier to reduce the TSC [Tree Size Class] of a stand versus rapidly increasing the TSC as it takes time for trees to grow. Therefore, an approach that manages for the large TSC to be at the high end or creates an overabundance of the large TSC, such as the Selected Alternative, leaves more options for the Forest to be successful in the long-term in achieving the desired conditions by promoting and maintaining the large TSC distributions at or above the desired ranges that can be easily converted to smaller TSCs in future NEPA decisions. This approach also allows for impacts from unforeseeable events (such as wildfire) to occur with less potential for having these events to preclude the Forest's ability to achieve the long-term desired conditions.

*Id. at FS2-081533.* This explanation concedes that the Project violates MPC 5.2 but justifies it because it can be cured more easily than another type of violation. Such reasoning would also support building a parking lot because it would be easier to remove later than an office building. If any violation of MPC 5.2 could be justified by explaining that a later project – such as cutting down the overabundance of large trees – would cure the violation, the 2003 Forest Plan could be ignored and NFMA rendered a null Act. In

**Memorandum Decision & Order – page 5**

the final analysis, the Forest Service has failed to explain "how the switch from MPC 5.2 to MPC 5.1 moves all components toward their desired conditions over the long term, as it is required to do under the 2003 Plan and agency regulations." *Alliance,* 907 F.3d at 1115. The Court will therefore grant the summary judgment filed by plaintiffs and deny those motions filed by defendants and intervenors. The Court will enter a separate Judgment as required by Rule 58(a).

**ORDER**

In accordance with the Memorandum Decision set forth above

NOW THEREFORE IT IS HEREBY ORDERED, that the motion for summary judgment filed by plaintiffs (docket no. 17) is GRANTED.

IT IS FURTHER ORDERED, that the motions for summary judgment filed by defendant and intervenors (docket nos. 24 & 25) are DENIED.

IT IS FURTHER ORDERED, that the Clerk shall close this case.

DATED: August 11, 2020

B. Lynn Winmill
U.S. District Court Judge